UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RNS SERVICING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 00108 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SPIRIT CONSTRUCTION SERVICES, | ) | |
| INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

RNS Servicing brings various state-law claims against Spirit Construction Services and its President, Steven Van Den Heuvel (call him Steve, because his brother is a role player in the case too).[1] R. 1, Compl.[2] The claims arise out of a business relationship gone sour between RNS Servicing's predecessor-in-interest, IFC Credit Corporation, and Ronald Van Den Heuvel (Ron, for short), Steve's brother. *Id.* ¶¶ 1-3. Relying partly on assurances made by Steve, IFC agreed to settle a lawsuit it had brought against Ron and several Ron-affiliated companies in exchange for promises of future payment. *Id.* ¶¶ 33-34, 40, 42, 45, 47-48. But almost immediately after the lawsuit was dismissed, the Ron-affiliated entities defaulted on their payment obligations. *Id.* ¶ 50. RNS Servicing now sues Steve and Spirit

---

[1]This Court has subject-matter jurisdiction under 28 U.S.C. § 1332. The parties are diverse—Spirit Construction is a citizen of Delaware and Georgia, Steve Van Den Heuvel is a citizen of Wisconsin, and RNS Servicing is a citizen of Illinois (as an LLC, RNS Servicing takes on the citizenship of its two individual members, both of whom reside in and are therefore citizens of Illinois), R. 1, Compl. ¶¶ 4-6—and the amount in controversy exceeds $75,000.

[2]Citations to the docket are indicated by "R." followed by the docket number and, where appropriate, a page or paragraph number.

1

Construction for negligent misrepresentation and fraud, alleging that Steve made a number of misrepresentations in order to get IFC to drop its lawsuit against Ron and, without those representations, IFC would not have agreed to settle. *Id.* The Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). R. 15, Mot. to Dismiss. For the reasons stated below, the motion is denied.

**I. Background**

For purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). IFC Credit Corporation is a now-dissolved corporation that provided equipment lease financing to commercial and industrial entities, including four tissue-paper manufacturing companies owned or operated by Ron (call them the Ron Companies). Compl. ¶ 1, 14. 19, 21. The Ron Companies executed a master lease with IFC in June 2005 and again in September 2005.[3] *Id.* ¶¶ 19, 21. But by October of that year, it had become clear that the Ron Companies would default on both leases. *Id.* ¶ 24. Hoping to stave off a takeover of his companies' assets, Ron enlisted his brother Steve to help. *Id.* ¶ 25.

As President[4] of Spirit Construction Services, Compl. ¶ 6, Steve was well-positioned to lend Ron assistance. Spirit Construction acts as a general contractor

---

[3] IFC then assigned its rights to a subset of the lease payments owed under the June 2005 Master Lease and the September 2005 Master Lease to Fortress Credit Corporation and George Washington Savings Bank, respectively. Compl. ¶¶ 20, 23. Neither assignee is a party to this lawsuit.

[4] The Complaint states that Steve is the Chief Executive Officer of Spirit Construction, *see, e.g.,* Compl. ¶ 6, but the Defendants refer to him as Spirit Construction's "President," *see, e.g.,* R. 18, Defs.' Br. at 1. Because the Acknowledgement of and Consent to Assignment that forms the basis of RNS Servicing's claims lists Steve's title as President, R. 1-6, Compl. at Exh. F, Continuing Pledge Agmt. at Sch. B, the Court will adopt that styling in this Opinion.

2

for the engineering, procurement, and construction of tissue-paper plants. *Id.* Steve and Ron proposed to restructure the Ron Companies' payment obligations as follows: first, Spirit Construction would hire the Ron Companies as subcontractors under five engineering, procurement, and construction contracts that it expected to execute soon; second, the Ron Companies would use this future income stream to attract equity investors in its tissue-paper plants; finally, the Ron Companies would use the proceeds from the equity sale, along with its subcontracting income, to pay off IFC. *Id.* ¶ 26.

Over the next couple of months, Steve and Ron discussed the proposal with IFC, and preliminary documents were exchanged, but the parties failed to reach a deal before the Ron Companies defaulted on the master leases. Compl. ¶¶ 27-32. In August 2006, IFC sued Ron and the Ron Companies in federal court for breach of the master leases.[5] *Id.* ¶ 33.

By April 2007, however, the parties had come to a settlement agreement. Compl. ¶ 40. The Ron Companies would pay $23.4 million, with $20 million paid up front and the remaining $3.4 million to be paid in ten monthly installments pursuant to a new master lease agreement (call this one the Settlement Master Lease). *Id.* ¶¶ 41-42; *see also* R. 1-4, Compl. at Exh. D, Settlement Agmt.; R. 1-5, Compl. at Exh. E, Settlement Master Lease. In addition to accepting part of the settlement amount in future installments, IFC also agreed to lend two of the Ron Companies an additional $440,000. Compl. ¶ 45; R. 1-7, Compl. at Exh. G, Master

---

[5]George Washington Savings Bank, as assignee of some of IFC's rights under the September 2005 Master Lease, filed a separate suit against the Ron Companies. Compl. ¶ 34. That suit was consolidated with the IFC suit. *Id.* ¶ 35.

Am. Agmt. As a safeguard, those two Ron Companies assigned to IFC their right to roughly $3.9 million of compensation (upped from an initial $3.4 million in order to incorporate the $440,000 loan) for subcontracting services that they were to provide to Spirit Construction on four of Spirit's engineering, procurement, and construction contracts (call them the "EPC Contracts," for convenience's sake). Compl. ¶ 44; R. 1-6, Continuing Pledge Agmt; Master Am. Agmt.

The final—and most important, for the purposes of this lawsuit—piece of the settlement puzzle was an Acknowledgement of and Consent to Assignment (the "Acknowledgement," in brief) executed by Steve on behalf of Spirit Construction and appended to the assignment of the Ron Companies' subcontracting income. Compl. ¶¶ 47-48; Continuing Pledge Agmt. at Sch. B, Acknowledgement. In the Acknowledgement, Spirit Construction represented that the two Ron Companies receiving the IFC loan "are contractors in connection with the [EPC Contracts] and that substantial sums of money in excess of $3,900,222 will become owing to them pursuant to said contracts."[6] What's more, Spirit Construction promised to pay the amounts due to the two Ron Companies directly to IFC, up to the $3,900,222[7] owed

---

[6] The Continuing Pledge Agreement attached to the Complaint actually contains two Acknowledgements. Continuing Pledge Agmt. at 11-12. Both are dated March 28, 2007, and both are signed by Steve. *Id.* As far as the Court can tell, the only difference between them is the amount of money pledged to IFC: one copy grants IFC the right to $3,900,222, *id.* at 11, and the other grants IFC the right to $3.4 million, *id.* at 12. Because both the Complaint and the Defendants' Brief quote the higher figure, *see* Compl. ¶¶ 47-48; Defs.' Br. at 1-2, the Court considers the copy pledging $3,900,222 (that is, the one at page 11 of R. 1-6) as the proper Acknowledgement.

[7] The Acknowledgement actually pledges two different amounts: $3,900,222 (at paragraphs 1 and 2) and $3,900,022 (at paragraph 4). The Court assumes this is due to typographical error; in any case, the actual amount is immaterial to the resolution of this motion to dismiss.

4

under the Continuing Pledge Agreement, as amended by the Master Amendment Agreement. *Id.* Finally, the Acknowledgement "confirm[ed] that the terms of the EPC Contracts remain in full force and effect and that [the two Ron Companies] are subcontractors there under and that neither we nor [the two Ron Companies] are presently in breach of the terms of the EPC Contracts." *Id.* Satisfied with this resolution, IFC dismissed its lawsuit with prejudice on April 19, 2007. *Id.* ¶ 49.

Problems arose almost immediately. The Ron Companies failed to make any of their installment payments between the date of dismissal and September 6, 2007, when IFC brought them back to court for breach of the Settlement Agreement and Settlement Master Lease. Compl. ¶¶ 50-51. IFC's new lawsuit also named Spirit Construction as a defendant, seeking a preliminary injunction to prevent Spirit from transferring any money to the Ron Companies until IFC was paid in full. *Id.* ¶ 51. Although the court in that case entered judgment against Ron and the Ron Companies, it granted Spirit summary judgment on standing grounds. *Id.* ¶¶ 52-53; R. 1-8, Compl. at Exh. I, Summ. J. Op., *IFC Credit Corp. v. Tissue Prods. Tech. Corp.*, 07-CV-04351 (N.D. Ill. Mar. 31, 2009). But the judgment was cold comfort to IFC, which was unable to collect on the judgment from Ron or the Ron Companies and filed for bankruptcy in 2009. *Id.* ¶¶ 52, 54. During the bankruptcy process, plaintiff RNS Servicing purchased IFC's rights under the Settlement Agreement and related agreements, including its legal claims against Steve and Spirit Construction. *Id.* ¶¶ 55-56.

5

RNS Servicing filed this lawsuit after receiving an email from Sharad Tak in 2016. Compl. ¶ 57. Tak owned ST Paper, a party to the four EPC Contracts, and in fact signed the EPC Contracts on behalf of his company. *Id.* ¶¶ 18, 57 He told RNS Servicing that the EPC Contracts "were frivolous contracts," and that "Ron tried to raise money for the[m] but was unsuccessful. Nothing ever happened on th[o]se contracts." R. 1-12, Compl. at Exh. L, Tak Emails. Despite this, "Spirit … has been doing well, [and] ha[s] been very profitable by executing several other construction contracts[,] including some EPC contracts." *Id.* Based partly on Tak's statements, RNS Servicing brings claims against Steve and Spirit Construction for negligent misrepresentation (Count 1), fraudulent inducement (Count 2), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq*. (Count 3), and civil conspiracy to commit fraud (Count 4). At the heart of these claims is the allegation that the four EPC Contracts were not bona fide contracts, but the Defendants represented that they were in order to persuade IFC to settle its claims against Ron—and to lend him more money on top. Compl. The Defendants have moved to dismiss RNS Servicing's claims, arguing that they are not pled with adequate specificity. Mot. to Dismiss.

## II. Standard of Review

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

6

plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal,* 556 U.S. at 678–79.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)).

But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) "require[s] the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."

7

*Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). Put differently, the complaint "ordinarily … must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks and citation omitted).

### III. Analysis

The Defendants argue that the Complaint is inadequate in two ways[8]: first, RNS Servicing has failed to explain how the statements in the Acknowledgement were false (an element of all four counts); and second, that RNS Servicing has not adequately alleged that the Defendants acted with the requisite state of mind as to Counts 1, 2, and 4. R. 18, Defs.' Br. The Court will address each of these issues in turn.

### A. Falsity

RNS Servicing alleges that the Acknowledgement contains at least three false statements of material fact: (1) that two of the Ron Companies would receive more than $3,900,222 as subcontractors under the EPC Contracts; (2) that Spirit Construction would pay the Ron Companies' compensation directly to IFC until the Ron Companies' debt was satisfied; and (3) that the EPC Contracts were in "full

---

[8]The Defendants also argued that the Complaint should be dismissed with prejudice because any amendment would be futile on limitation grounds and because the suit was brought for an improper purpose. R. 18, Defs.' Br. at 8-12. But neither of these arguments was properly raised: the statute of limitations argument is an affirmative defense and therefore cannot form the basis for a dismissal motion, and the improper-purpose argument was unaccompanied by an actual Rule 11 motion. *See* R. 21, 3/23/17 Minute Entry. So the Court instructed RNS Servicing to ignore those arguments in its response brief, and they are not discussed in this Opinion. *Id.*

8

force and effect," with two Ron Companies as subcontractors thereunder, and none of the three entities were in breach of the EPC Contracts at the time of execution. Compl. ¶¶ 59, 69, 78, 87-88.

The Defendants contend that these allegations are "conclusory," "bare recitations" that "merely cite elements of the claim" rather than facts that warrant a presumption of truth at the motion to dismiss stage. Defs.' Br. at 5; *see Iqbal,* 556 U.S. at 678–79. RNS Servicing has failed to satisfy even the ordinary motion to dismiss standard, the Defendants argue, much less the heightened pleading requirement that applies to its three fraud claims.[9] Defs.' Br. at 5-6; R. 24, Defs.' Reply Br. at 2-5; *see* Fed. R. Civ. P. 9(b).

But the Defendants ask too much of RNS Servicing—certainly more than the law does at this stage. To survive dismissal, RNS Servicing need only "give enough details about the subject-matter of the case to present a story that holds together." *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). That is, "the court will ask itself *could* these things [alleged by the plaintiff] have happened, not *did* they happen." *Id.* As for Rule 9(b)'s particularity requirements, the heightened pleading standard merely imposes the burden of stating "the who, what, when, where, and how" of the fraud alleged in Counts 2 to 4. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

RNS Servicing has met this burden. It has identified the "who," naming Steve and Spirit Construction as the persons making the false representations. Compl. ¶¶

---

[9] Count 1, the negligent-misrepresentation claim, is not a fraud claim and is therefore not governed by the Rule 9(b) standard. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).

9

69, 78, 87-89. It has provided the "time, place, and content of the misrepresentation," distilling three specific misleading statements from the Acknowledgement and attaching the document itself to the Complaint. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); Compl. ¶¶ 69, 78, 88; Acknowledgement. And by walking through the history of IFC's dealings with Ron, Steve, and Spirit Construction—including a detailed narrative explaining the impetus behind the Settlement Agreement, Settlement Master Lease, and the Continuing Pledge Agreement, as well as the relationship between the various contracts—RNS Servicing has adequately stated "the method by which the misrepresentation was communicated to the plaintiff"—that is, the "how."[10] *U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014).

As for the overall plausibility of RNS Servicing's allegations of falsity, the Complaint contains enough "factual content that allows the court to draw the reasonable inference that" the statements contained in the Acknowledgement were false. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Importantly, RNS Servicing is "not require[d] … to demonstrate that a representation was indeed false." *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *see also Camasta*, 761 F.3d at 737. It is enough that the Court can plausibly *infer*, based on the facts alleged in the Complaint, that the Defendants' representations—that the EPC Contracts were fully-valid agreements that would pay over $3.9 million to IFC (via

---

[10]Contrary to the Defendants' representations, the "how" component of the Rule 9(b) "newspaper rule" references how the misrepresentation was communicated, not "how the representation was false." *See Grenadyor*, 772 F.3d at 1106.

10

two Ron Companies)—were false. *See U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) (noting that, although "it is essential to show a false statement," "much knowledge is inferential," and it suffices if "the inference that [the plaintiff] proposes is a plausible one."). Here, RNS Servicing asserts that a signatory to the EPC Contracts admitted that the contracts were "frivolous." Compl. ¶ 57; *see* Tak Emails. The Defendants argue that this statement, taken in context, does not mean that the EPC Contracts were invalid. Defs.' Reply Br. at 5. They urge the Court to focus on the remainder of the sentence, which states that "Ron tried to raise money for [the EPC Contracts] but was unsuccessful." *Id.*; *see* Tak Emails. True, it is possible—plausible, even—to conclude that Steve and Spirit Construction made the representations in the Acknowledgement in good faith, and the EPC Contracts fell through for lack of funding. But on a Rule 12(b)(6) motion, the Court "draw[s] all inferences in the light most favorable to the nonmoving party," RNS Servicing. *See Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014). And, from Tak's characterization of the EPC Contracts as "frivolous"—coupled with his assertion that "[n]othing ever happened on" the EPC Contracts, even though other EPC projects in Spirit Construction's stable had proceeded successfully and profitably—one can infer that the EPC Contracts were not bona fide agreements. *See* Tak Emails; *see also Swanson*, 614 F.3d at 404 ("[I]t is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.").

The post-settlement timeline adds to the plausibility of RNS Servicing's allegation of falsity. According to the Complaint, the Continuing Pledge Agreement (which includes the Acknowledgement) was signed on March 28, 2007, and amended on April 18, 2007. Compl. ¶¶ 44-48; Continuing Pledge Agmt; Master Am. Agmt. On April 19, IFC dismissed its lawsuit against Ron and the Ron Companies with prejudice. Compl. ¶ 49. Once the lawsuit was dropped, the Ron Companies *immediately* breached the Settlement Master Lease, failing to make any payments from the day the first IFC lawsuit was dismissed to the day that the second IFC lawsuit, for breach of the Settlement Agreement and Settlement Master Lease, was filed. *Id.* ¶¶ 50-51. (Indeed, it is unclear if the Ron Companies *ever* made any payments under the Settlement Master Lease.) It is reasonable to infer, based on the speed with which the Ron Companies breached the Settlement Master Lease, that the EPC Contracts and the revenue stream that they represented were not genuine.

### B. State of Mind

Even if the statements in the Acknowledgement were false, the Defendants argue, Counts 1 (negligent misrepresentation), 2 (fraudulent inducement), and 4 (civil conspiracy, incorporating the fraudulent inducement claim) must fail because the Complaint does not adequately allege that the Defendants possessed the requisite states of mind. Defs.' Br. at 6-7. To prevail on a negligent misrepresentation claim, a plaintiff must show that the defendant should have known that the relevant statement was false, *First Midwest Bank, N.A. v. Stewart*

*Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006) (requiring "carelessness or negligence in ascertaining the truth of the statement by the party making it"); on a fraudulent inducement claim, the defendant must have *actually* known of the statement's falsity, *Board of Educ. of City of Chi. v. A, C and S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989). Even under the heightened pleading standard for fraud, however, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Complaint alleges simply that the Defendants "knew," Compl. ¶ 70, or that they "should have known," *id.* ¶ 61, that their statements in the Acknowledgement were false. No more particularity is needed. *See Armstrong v. Daily*, 786 F.3d 529, 547 (7th Cir. 2015) (allegation that defendant "acted 'with bad faith from the very beginning … ' … is no bare legal conclusion," because "Rule 9(b) allows states of mind to be alleged generally"). Even so, it is entirely reasonable to infer that the Defendants knew the EPC Contracts would not amount to much. Taken together, Steve and Ron's family relationship, Compl. ¶ 13, Steve's efforts to help Ron avoid default under the June 2005 and September 2005 Master Leases, *id.* ¶¶ 25-31, the Ron Companies' speedy breach of the Settlement Master Lease, *id.* ¶¶ 49-50, Sharad Tak's assertion that the EPC Contracts were "frivolous," *id.* ¶ 57; Tak Emails, and Tak's claim that Spirit's other EPC projects were successful, *id.*, "afford a basis for believing that [RNS Servicing] could prove scienter."[11] *See Robin v.*

---

[11]RNS Servicing argues that fraudulent intent can be inferred from the fact that Ron and his wife were indicted on fraud charges in April and October 2016. R. 22, Pl.'s Br. at 8-9. Although the Court may take judicial notice of the fact that the indictments exist, *Indep. Trust Corp. v. Stewart Infor. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012), it will not do so

*Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) (quoting *DiLeo*, 901 F.2d at 629). The Complaint more than adequately satisfies its pleading requirements.

## IV. Conclusion

For the reasons stated above, the Defendants' motion to dismiss, R. 15, is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 25, 2017

---

here. Ron is not a party to this action, and his indictment on an entirely unrelated alleged fraud is not relevant to this dispute. And in any case, the Complaint survives dismissal on its own merits.