UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RNS SERVICING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:17-cv-00108 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SPIRIT CONSTRUCTION SERVICES, INC., STEVEN VAN DEN HEUVEL, and SHARAD TAK | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

RNS Servicing filed an amended complaint to add claims against Sharad Tak to its lawsuit against Sprit Construction Services and Steven Van Den Heuvel (Steve). R. 31, Am. Compl.[1] The claims arise out of a failed business relationship between RNS Servicing's predecessor-in-interest, IFC Credit Corporation, and Ronald Van Den Heuvel (Ron), Steve's brother. *Id.* ¶¶ 1-2. RNS alleges that in reliance on assurances made by both Steve and Tak, IFC agreed to settle a lawsuit against multiple Ron-affiliated companies. *Id.* ¶¶ 58-61. The Ron affiliates defaulted on their settlement obligations, and IFC filed for bankruptcy. *Id.* ¶¶ 63, 67. RNS bought IFC's claims against Ron and his associates, and now seeks to collect from the entities that it holds responsible for inducing IFC to enter the settlement agreement:

---

[1]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

Tak, Steve, and Spirit. *See id*. at ¶¶ 69, 1-3.[2] Tak moves to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, contending that (1) this Court cannot exercise personal jurisdiction over him; (2) he is shielded from personal liability because he was acting in his capacity as an executive of a limited liability company; and (3) the claims against him are time-barred by the applicable statutes of limitations. R. 40, Def. Br. at 2. For the reasons that follow, Tak's motion to dismiss is denied.

## I. Background

For the purposes of a motion to dismiss, the Court accepts the allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because the opinion denying Spirit and Steve's motion to dismiss addresses those facts, *see* R. 29, Order (August 25, 2017), only the facts relevant to the claims against Tak are detailed.

### A. The First Lawsuit between INS and the Ron Companies

IFC Credit Corporation, when it operated (it is now dissolved), provided equipment lease financing to commercial and industrial entities. Am. Compl. ¶ 20. In 2005, IFC entered into two master lease agreements with multiple tissue-paper manufacturing companies owned or operated by Ron (the Ron Companies). *Id.* ¶¶ 23-25. Within months, it became evident to IFC and its affiliates that the Ron Companies

---

[2]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000. Plaintiff RNS Servicing is an LLC; an LLC takes on the citizenship of its members, and the two individual members of RNS are citizens of Illinois. Am. Compl. ¶¶ 4-5. On the defense side, Spirit Construction Services is a citizen of Delaware and Georgia, Steven Van Den Heuvel is a citizen of Wisconsin, and Sharad Tak is a citizen of Florida. Am. Compl. ¶¶ 6-8; R. 40, Def. Br. at 2 n.2. RNS seeks to recover upward of $1 million in damages, which is a plausible calculation of possible damages. Am. Compl. ¶¶ 108, 117.

2

would default on the leases. *Id.* ¶ 28. To try and avoid default, Ron enlisted the help of his brother Steve—the President of Spirit Construction—and proposed projects which the Ron Companies would complete with Spirit in order to generate sufficient income to pay back IFC. *Id.* ¶¶ 29-35. But the parties were unable to come to an agreement before the Ron Companies defaulted. *Id.* ¶ 36. IFC initiated its first lawsuit against the Ron Companies in August of 2006. *Id.* ¶ 37.

### B. The Settlement Agreement

In December of 2006, the Ron Companies drafted a settlement agreement. *Id.* ¶ 49; *see also* Am. Compl. at Exh. D, Settlement Agmt. The Settlement Agreement stipulated that the Ron Companies would pay $23.4 million to IFC—$20 million of that amount immediately and the remaining $3.4 million in ten monthly installments pursuant to the execution of a new master lease agreement (the Settlement Master Lease). *Id.* ¶¶ 49, 51; Settlement Agmt. at 7-8; Am. Compl. at Exh. E, Settlement Master Lease at Lease Schedule No. 001. Under this plan, IFC would lend the Ron Companies an additional $440,000, and in exchange the Ron Companies would assign to IFC their right to roughly $3.9 million in compensation to be earned by providing subcontracting services for four of Spirit's engineering, procurement, and construction contracts (known in the industry as EPC Contracts). *Id.* ¶¶ 56-57; Am. Compl. at Exh. G, Master Am. Agmt ¶¶ 2-3; Am. Compl. at Exh. F, Continuing Pledge Agmt at 1. These EPC Contracts were to be executed with ST Paper I. *Id.* ¶ 49; Master Am. Agmt.; Continuing Pledge Agmt. Sharad Tak is the controlling member of ST Paper I and ST Paper II, LLC, both of which are limited liability companies

3

incorporated in Delaware, with their principal places of business in Wisconsin. *Id.* ¶ 11.

### C. The Meeting with Sharad Tak and the Second Lawsuit

Due to the Ron Companies' previous default, IFC was suspicious of the proposed Settlement Agreement. *Id.* ¶ 58. To get some reassurance, in late March or early April of 2007, IFC executives Marc Langs and Rudolph Trebels met with Ron and Tak at IFC's offices in Morton Grove, Illinois. *Id.* ¶ 60. Tak, a Florida resident, traveled to Illinois in order to attend the meeting at the IFC offices. Def. Br. at 2; R. 43, Def. Reply at 10-11. At this meeting, IFC made it clear that its acceptance of the Settlement Agreement was contingent on Tak's confirmation of the EPC Contracts. Am. Compl. ¶¶ 103, 112, 121. Tak made several key representations to IFC. *Id.* ¶ 61. He represented that (1) his company had entered into the four EPC Contracts with Spirit referenced in the Settlement Agreement; (2) the Ron Companies would be used as subcontractors for the projects; (3) he fully intended to complete the four projects; (4) the EPC Contracts were sufficient to secure financing for the projects contemplated; and (5) because of confidentiality concerns, he was not able to allow IFC to review the EPC Contracts. *Id.*

Shortly after the meeting, on April 13, 2007, the Ron Companies and IFC entered the Settlement Agreement, resolving all pending claims. *Id.* ¶¶ 51, 62; Settlement Agmt. A few days later, around April 16, Tak purchased one of the Ron Companies' properties, the Oconto Falls Paper Plant, at a discounted price of $20 million; $17,300,000 of these proceeds went to IFC to pay the Settlement Agreement.

4

*Id.* ¶ 52. But the Ron Companies quickly defaulted on their agreement, never making any of the installment payments due under the Settlement Agreement. *Id.* ¶ 63.

On September 6, 2007, IFC took Ron and the Ron Companies to court again, this time for breach of the Settlement Agreement. *Id.* ¶ 64. This time, IFC added Spirit as a defendant, seeking a preliminary injunction to prevent Spirit from making any payments to the Ron Companies until IFC had been paid in full. *Id.* At the time of the lawsuit, Spirit had not subcontracted with any of the Ron Companies for services on the EPC Contracts with ST Paper I. Am. Compl. at Exh. H, Summ. J. Op., *IFC Credit Corp. v. Tissue Prods. Tech. Corp.*, 2009 WL 901009, at *6 (N.D. Ill. Mar. 31, 2009). The district court in that case entered a judgment against Ron and a majority of the Ron Companies. *Id.* at ¶ 65; *see also* Summ. J. Op. at 7-8. As for the claims against Spirit, the district court held that the injuries were too speculative, so IFC did not have standing to bring its suit. Summ. J. Op. at 17-18.

### D. IFC's Dissolution and the RNS Lawsuit

IFC was ultimately unable to collect on the judgment against the Ron Companies, and IFC filed for bankruptcy in July 2009. Am. Compl. ¶ 67. In August 2014, Plaintiff RNS Servicing purchased IFC's rights and legal claims under the master leases and the Settlement Agreement. *Id.* ¶ 3. During the investigation of these claims, in March 2016, Marc Langs (the former CFO of IFC) emailed Tak to ask what he knew about the EPC Contracts on which the Settlement Agreement hinged. *Id.* ¶ 70; Am. Compl. at Exh. L, Email Correspondence. Tak responded: "These were

5

frivolous contracts, Ron tried to raise money for these but was unsuccessful. Nothing ever happened on these contracts." *Id.*

RNS brought this lawsuit against Spirit and Steve in January 2017. RNS amended its complaint in September 2017 to add claims against Tak. Am. Compl. RNS makes four claims against Tak: negligent misrepresentation (Count 4); fraudulent inducement (Count 5); violation of the Illinois Fraud and Deceptive Business Practices Act (815 ILCS 505/2) (Count 6); and civil conspiracy (Count 7). *Id.* ¶¶ 99-134. Essentially, RNS alleges that Tak misrepresented the value and existence of the EPC Contracts to induce IFC to accept the agreement. *Id.* ¶¶ 100-05, 110-115, 119-122. RNS further contends that Tak conspired with Spirit and Steve to achieve this goal. *Id.* ¶¶ 128-132. Tak's misrepresentations about the EPC contracts persuaded IFC to settle with the Ron Companies, allowing Tak to purchase the Ron Companies' Oconto Falls tissue plant property at a discounted price. *Id.* ¶ 132. Tak moves to dismiss the claims against him, arguing that this Court cannot exercise personal jurisdiction over him; that he is shielded from personal liability under Illinois's Limited Liability Company Act or Delaware's Limited Liability Company Act; and that the claims are time-barred by the applicable statutes of limitations. Def. Br. at 2; Def. Reply at 3.

## II. Standard of Review

Tak moves to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that personal jurisdiction is proper. *Purdue Res. Found. v.*

*Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the motion is based on the submission of written materials, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Absent an evidentiary hearing when fact-finding is needed over disputed facts, the Court accepts the well-pleaded factual allegations and uncontroverted statements in the written materials as true and resolves any conflicts in favor of the plaintiff. *Purdue*, 338 F.3d at 782-83 & n. 14.

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up).[3] These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

7

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the ICFA. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Thus, Rule 9(b) requires that the complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, the complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441-42 (cleaned up).

### III. Analysis

### A. Personal Jurisdiction

Tak argues that this Court cannot exercise personal jurisdiction over him. A federal court sitting in diversity "has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779. An Illinois court can exercise personal jurisdiction over a nonresident to the extent that Illinois's long-arm statute authorizes jurisdiction, and to the extent that asserting personal jurisdiction comports with the Fourteenth Amendment's Due Process Clause. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713-714 (7th Cir. 2002).

8

Illinois's long-arm statute "permits service to the constitutional limits of its power," *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 521 (7th Cir. 2018), so "the state statutory and federal constitutional requirements merge." *uBid v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); 735 ILCS 5/2-209(c).

The Due Process Clause requires that a defendant make "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). Personal jurisdiction can either be general or specific. *uBID*, 623 F.3d at 425. General jurisdiction affords jurisdiction over the defendant even when the lawsuit has no relationship to the defendant's contacts in the forum state, but it only applies where a defendant is "essentially at home in the forum state." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697-98 (7th Cir. 2015) (cleaned up). Neither party contends that this Court has general jurisdiction over Tak. R. 42, Pl. Resp. Br. at 2; Def. Br. at 3.

Specific jurisdiction is warranted when a defendant has directed his activities at the forum state, and the cause of action relates to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Seventh Circuit has held that "the contacts supporting specific jurisdiction can take many different forms." *uBID*, 623 F.3d at 426. What is essential is that the defendant's contacts be purposefully directed at the forum state. *Id.* (citing *Burger King*, 471 U.S. at 475). The requisite connection to the forum must arise from the defendant's conduct such that the defendant would anticipate being haled into court there; personal jurisdiction cannot

9

be based solely on the defendant's relationship to the plaintiff or the plaintiff's unilateral activities. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014); *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

In this case, RNS must establish three key elements for specific personal jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citing *Burger King*, 471 U.S. at 472; *Int'l Shoe*, 326 U.S. at 316) (cleaned up). *See also Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695-696 (7th Cir. 2018).

### 1. Conduct "purposefully directed" at the forum state

Tak's conduct was "purposefully directed" at Illinois. From the Supreme Court's decision in *Calder v. Jones*, the Seventh Circuit has discerned a three-part test for determining whether conduct was "purposefully directed" at the forum state. *Felland*, 682 F.3d at 674-675.[4] The defendant must engage in "(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state;

---

[4]Tak suggests that *Felland v. Clifton* has been called into question, citing to a case from the Northern District of Illinois. Def. Reply at 9. But that district-court decision was later appealed, and the Seventh Circuit (which affirmed) nowhere noted any doubt about the legal validity of *Felland*. Instead, the Seventh Circuit distinguished the facts of *Felland* from the case the Court of Appeals was considering. *John Crane*, 891 F.3d at 696.

(3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* (cleaned up).

RNS alleges that Tak traveled to the IFC offices in Illinois and made misrepresentations about having entered into EPC Contracts with Spirit when these contracts did not actually exist—all with the intention of inducing Illinois-based IFC into the Settlement Agreement. Am. Compl. ¶¶ 100-05, 110-115, 119-122. In other words, Tak deliberately traveled to Illinois in order to commit (alleged) torts in Illinois. What's more, Tak must have known that IFC would be injured in the forum state. He traveled to IFC's office in Illinois, and would have known that Illinois-based IFC's injury would be felt in Illinois. *Id.* The Settlement Agreement, which hinged on the EPC Contracts, was executed in Illinois and is governed by Illinois law. *Id.* ¶¶ 60-61; Settlement Agmt. ¶ 20. The situation is analogous to that of *Felland v. Clifton*. In *Felland*, the Seventh Circuit held that the defendant's conduct was "expressly aimed" at the forum state when the plaintiff alleged that the defendant's false statements—in the form of emails, letters, and phone calls—induced him to remain in a development deal. *Felland*, 682 F.3d at 676. In this case, there is even more support for personal jurisdiction, because Tak physically traveled to Illinois and did not just direct communications into the state. Tak's alleged misconduct at the meeting in Illinois establishes personal jurisdiction.[5]

---

[5]Tak contends that a single meeting is insufficient to establish personal jurisdiction, but this leaves out the crux of the allegation that Tak intentionally came to Illinois and made false representations to an Illinois-based company. Def. Br. at 13. There is no bright-line numerical threshold of contacts necessary for personal jurisdiction; the question is simply whether the claims arise out of the defendant's contact with the forum state. *Burger King*,

11

## 2. Injury "arises out of" the contacts

Second, the conduct arises out of the defendant's forum-related activities. "Even where a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts." *Felland*, 682 F.3d at 676 (citing *Tamburo*, 601 F.3d at 708 (citing *Burger King*, 471 U.S. at 472)). Among circuit courts, there is a split in authority as to whether the defendant's contacts in the forum state must be the but-for cause or, instead, the proximate cause of the plaintiff's injuries—or both. *Id.* at 676-677. As in *Felland*, the issue need not be decided here, because the record "is sufficient even under the strictest understanding of the 'arising out of' requirement." *Id.* at 677 (cleaned up). The analysis above makes clear that Tak aimed the allegedly tortious conduct at Illinois by attending the meeting in Illinois and making representations to Illinois-based IFC that the EPC Contracts were genuine and would be completed. IFC alleges that Tak's representations induced it to enter the Settlement Agreement. So Tak's actions are both the proximate and the but-for cause of IFC's injuries, and IFC's claims indisputably arise out of Tak's contacts with Illinois.

## 3. Fair play and substantial justice

Finally, exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *See Tamburo*, 601 F.3d at 702 (citing *Burger King*, 471 U.S. at 472; *Int'l Shoe*, 326 U.S. at 316). To assess this concern, the Court evaluates "the

---

471 U.S. at 475 n.18 ("So long as it creates a substantial connection with the forum, even a single act can support jurisdiction.") (cleaned up).

burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (quoting *Burger King*, 471 U.S. at 477). Illinois has a strong interest in providing a forum for residents injured in Illinois by out-of-state actors. *Tamburo*, 601 F.3d at 709. What's more, Tak does not contend that defending a lawsuit in Illinois is an undue burden, instead arguing only that he has made insufficient contacts with the state. Def. Br. at 9-14; Def. Reply at 9-13. Because Tak established the requisite contacts when he purposely directed tortious conduct at Illinois, he should have expected to defend that conduct in Illinois. *Linkepic, Inc. v. Vyasil, LLC*, 146 F.Supp.3d 943, 954 (N.D. Ill. 2015) (cleaned up). It is not surprising that defending a lawsuit out-of-state creates a burden for defendants, and absent a "compelling case that the presence of some other considerations would render jurisdiction unreasonable," the Court concludes that it is proper to exercise specific jurisdiction over Tak. *See Burger King*, 471 U.S. at 477.[6]

---

[6]RNS argues that if jurisdiction was not established by Tak's conduct in Illinois, jurisdiction would be proper under the "conspiracy" theory of personal jurisdiction. Pl. Resp. at 2. Because jurisdiction is established by Tak's contacts with Illinois, there is no need to decide this issue. It is worth noting that there is debate over whether Illinois law truly recognizes a conspiracy theory of jurisdiction. *Smith v. Jefferson Cty. Bd. of Educ.*, 378 F. App'x 582, 585-86 (7th Cir. 2010) (holding that the conspiracy theory of jurisdiction certainly could not be valid absent some purposeful direction at a forum state by a defendant, and noting that "the theory may not be valid in Illinois.").

**B. Tak's Personal Liability**

Moving on from personal jurisdiction, Tak next contends that RNS fails to adequately state a claim because he is shielded from personal liability by Illinois's Limited Liability Company Act, or alternatively, under Delaware's Limited Liability Company Act. Def. Br. at 4-5; Def. Reply at 3; 805 ILCS 180/10-10; Del. Code Ann. tit. 6, § 18-303. He argues that he was not acting in an individual capacity when representing ST Paper I, and that because RNS has alleged insufficient facts to pierce the corporate veil, he cannot be held liable. Def. Br. at 4-5; Def. Reply at 3.[7]

As a starting point, Delaware law governs the question of Tak's personal liability for actions taken in his role as controlling member of ST Paper I. "A federal court sitting in diversity applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Atlantic Casualty Ins. Co. v. Garcia*, 878 F.3d 566, 569 (7th Cir. 2017) (cleaned up); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under the Illinois Limited Liability Company Act, "[t]he laws of the State or other jurisdiction under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its managers, members, and their transferees." 805 ILCS 180/45-1. Tak's company,

---

[7]Specifically, Tak argues that under Illinois law, LLC members and managers have no individual liability to nonmembers absent a provision in the articles of organization, unless the manager is acting in his individual capacity. Def. Br. at 5-6 ("[T]he allegations of the First Amended Complaint demonstrate that Tak was not acting in any individual capacity when the alleged misrepresentations were made; thus, section 10-10 of the LLC Act precludes personal liability"). In the alternative, he argues that even if Delaware's law were to apply, "Plaintiff's Amended Complaint fails to allege that ST Paper's articles of organization contain provisions subjecting Tak to personal liability." Def. Reply at 3.

14

ST Paper I, is a Delaware limited liability company, Am. Compl. ¶ 11, so Delaware law applies.

Although it is true that members of a limited liability company are generally not liable for the debts, obligations, and liabilities of the company, liability can attach when the members themselves participate in or authorize a tort. *Spanish Tiles, Ltd. v. Hensey*, 2009 WL 86609, at *2 (Del. Super. Ct. Jan. 7, 2009) ("The personal participation doctrine attaches liability to corporate officers for torts which they commit, participate in, or inspire, even though they are performed in the name of the corporation. ... Individual liability attaches only where an officer directed, ordered, ratified, approved, or consented to the tortious act in question.") (cleaned up). The personal participation doctrine applies to both corporations and limited liability companies. *Id.*

In the case at hand, each of RNS's claims against Tak sound in tort. Am. Compl. ¶¶ 99-134. More importantly, RNS alleges that it was Tak himself who committed each of the torts, conduct which easily meets the threshold required by the personal participation doctrine. *See Washington House Condo. Ass'n of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, at *14 (Del. Super. Ct. Aug. 8, 2017). Because RNS alleges that Tak himself committed the tortious actions, Tak can be held individually liable and there is no statutory protection.

### C. Statute of Limitations

Finally, Tak contends that RNS's claim is time-barred by the applicable statutes of limitations. But dismissing claims as time-barred at the pleading stage is

15

"irregular." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). The statute of limitations is an affirmative defense for which the defendant bears the burden of proof, and "these defenses typically turn on facts not before the court at that stage in the proceedings."*Id.* (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)); *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). But where a plaintiff has "pleaded itself out of court by alleging things that, if true, devastate its claim," *N. Trust*, 372 F.3d at 888, dismissal is appropriate under a Rule 12(c) judgment on the pleadings. *Richards v. Mitcheff,* 696 F.3d 635, 637-38 (7th Cir. 2012).

In Illinois, claims for negligent misrepresentation, fraudulent inducement, and civil conspiracy are subject to a five-year statute of limitations. *McMahan v. Deutsche Bank AG*, 938 F.Supp.2d 795, 802 (N.D. Ill. Apr. 5, 2013); 735 ILCS 5/13-205. Claims for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act are subject to a three-year statute of limitations. 815 ILCS 505/10a(e). Tak argues that the claims are clearly untimely even under the discovery rule, and that equitable tolling is not warranted. Def. Reply at 1-2.

### 1. The Discovery Rule

The discovery rule of Illinois provides that "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980-81 (Ill. 1981) (cleaned up). Tak argues that IFC knew or

reasonably should have known about its potential claims against him in September 2007, when it filed its first lawsuit against the Ron Defendants and Spirit Construction. Def. Br. at 7. In the alternative, Tak argues that the claims accrued in 2008. Def. Reply at 6. Tak points out that when IFC moved for summary judgment in 2008, it also filed a motion to strike Spirit's denials of IFC's assertions "that Spirit Construction never reasonably expected to engage [the Ron Companies] as subcontractors in connection with any of the four (4) EPC Contracts," and "that Spirit Construction's representations to IFC in the 'Acknowledgement of Assignment' dated March 28, 2007 were not true." *IFC Credit Corp. v. Tissue Prods. Tech. Corp. et al.*, No. 07 C 4351, ECF No. 82, Mot. Strike ¶ 2(c). Tak argues that this suspicion of Spirit was sufficient to put IFC on notice to investigate any alleged misconduct by him, and that under either date the claims are time-barred. Def. Br. at 6-9; Def. Reply at 6-7.

RNS responds that neither it nor IFC suspected that the EPC Contracts or Tak's representations were fraudulent until receiving Tak's email in 2016. Pl. Resp. at 8. RNS points out that IFC's motion to strike was denied and the court ultimately dismissed IFC's claims against Spirit, and argues that because the district court found that IFC's claims against Spirit could not move forward, the statute of limitations could not have begun to run at that time. Pl. Resp. at 10; Summ. J. Op. at 17-18. RNS also argues that a default on the part of the Ron Defendants does not translate to IFC knowing that Tak had caused them injury. Pl. Resp. at 10.

In the end, the resolution of these arguments must wait for another day. It is not evident from the face of the complaint that the statute of limitations has run, so

17

dismissal is inappropriate at this stage. *Sidney*, 782 F.3d at 928 ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record."). IFC's motion to strike challenged Spirit's commitment to engaging the Ron Companies in the completion of the EPC Contracts, but it did not question the existence of the EPC Contracts with ST Paper I and Tak. *IFC Credit Corp.*, No. 07 C 4351, Mot. Strike ¶ 2(c). Although IFC was clearly suspicious of Spirit, there is nothing in the pleadings definitively establishing that IFC knew or had reason to know that it had been legally injured by Tak at that time. Whether the claims accrued against Tak at that time is debatable, and must be decided at a later stage of the litigation. *Knox*, 430 N.E.2d at 980-81. Tak will have the chance to engage in discovery to find out whether IFC had notice or reason to know of the claim's accrual against him. After discovery, Tak may raise the statute of limitations defense again. Further, Tak may ask the Court to entertain an early motion for summary judgment on the statute of limitations issue, but he must show good cause to do so.

### 2. Equitable tolling

Based on the need for discovery on the statute of limitations defense, there is no need to address RNS's argument that equitable tolling would be warranted if the claims against Tak accrued in 2007 or 2008. Pl. Response at 11. But the Court notes its skepticism that the 2009 trial-court decision holding that the suit against Spirit

was premature is, by itself, automatic and indisputable grounds for equitable tolling. IFC could have appealed that decision, and apparently did not. The fact that IFC did not take that step might very well undermine the diligence requirement for equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 653 (2010) ("The diligence required for equitable tolling purposes is reasonable diligence") (cleaned up). In any event, a decision on this issue can only be addressed later too.

## IV. Conclusion

For the reasons stated in this opinion, Tak's motion to dismiss is denied. When Tak was added to the suit, the original parties only had two more fact-discovery depositions to take. R. 36. Tak's counsel shall review the already-produced discovery (if they have not already, the parties shall promptly provide a copy of all the prior discovery to Tak by August 13, 2018), and then the parties shall confer to decide what additional discovery is needed to finish fact discovery now that Tak is staying in the case. This should be readily doable by the September 6, 2018 status hearing. The parties shall file a proposed discovery schedule on August 31, 2018.

ENTERED:

      s/Edmond E. Chang  
Honorable Edmond E. Chang  
United States District Judge

DATE: August 6, 2018